GEORGE SIMMONS vs. CHARLES POMEROY.

LAW. No. 23,614.

{ Decided March 31, 1884.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

1. Where one has placed himself in a position which will disable him from performing his part of a contract, he cannot sue the other party to the contract for a failure to perform his part of it.

2. P. agreed to convey certain lands to L. in exchange for a certain house. Afterwards L., for a consideration paid him by S., assigned the contract to S. and conveyed him the house, the latter assuming to convey the same to P. on receiving from him the title to the lands: S., however, finding the title to the house bad returned it to L.; P. then refused to convey the lands, and upon suit brought by S. against him for breach of contract, it was,

Held, that S. was bound to be ready to convey the house as soon as P. tendered him the land, but that as he had put it out of his power to convey the house by returning it to L., he had already broken his part of the agreement and was not in a condition to sue for the breach on the part of P.

STATEMENT OF THE CASE.

This was an action of assumpsit to recover damages for breach of contract, the plaintiff alleging that defendant, for a consideration paid to one A. Langdon, agreed to sell to plaintiff 800 acres of Florida lands, and deliver patents for same.

The general issue was pleaded, and on the trial plaintiff offered evidence showing that on or about the 2d of April, 1879, plaintiff and defendant entered into an agreement in writing, as follows:

"For value received, I hereby agree to sell to George Simmons eight hundred acres of land in Florida; the patent for the same to be transferred to Simmons as soon as received by me; and I hereby consent to have A. Langdon convey to Simmons the titles to house No. 1743 Eleventh street n. w. (subject to the incumbrance now on it), the same to be held by Simmons as collateral security for the perfection of the title to the Florida lands, and, when the

title is so perfected, Simmons to return to me the title to the house No. 1743 Eleventh street.

"CHARLES POMEROY.
"GEORGE SIMMONS.

"Witness:
"A. LANGDON."

He further testifies that before the execution of the above agreement, he had entered into a contract to sell to Andrew Langdon certain books, furniture and fixtures contained in house No. 330 Four-and-a-half street, in the city of Washington, in consideration of which Langdon was to convey him forty acres of land in Florida, Langdon to have possession at once of the books.

After the execution of the agreement with Langdon, the latter informed Simmons that he did not, himself, possess the title to the Florida lands, but that he, Langdon, had an agreement with the defendant Pomeroy, by which Pomeroy was to convey eight hundred acres of Florida lands to him, Langdon, as soon as he, Pomeroy, would obtain patents therefor, which he was about to do ; and he asked plaintiff if he would take a contract from Pomeroy for the transfer of the land, to which plaintiff assented.

The plaintiff and Langdon then went to Langdon's office and met Pomeroy ; and, while the books were still in the possession of the plaintiff, the agreement, which is the subject of this suit, was entered into in place of the one with Langdon.

Upon the execution of the agreement with Pomeroy, the plaintiff delivered the books to Langdon.

Plaintiff also testified that the inducement which led him to deliver the books to Langdon was the promise of Pomeroy to transfer the patents to Florida lands. That he was informed, both by Langdom and Pomeroy, that it would be but a short time before they were obtained, but no definite time could be stated. That Langdon and Pomeroy both told him that they thought the Florida land would be worth about $2.50 per acre.

The plaintiff further offered evidence tending to show that Langdon delivered a deed to plaintiff, which was never recorded, for a house on Eleventh street, as collateral security for the transfer of the patents of the Florida lands to him by Pomeroy. That the plaintiff thereafter investigated the title to the Eleventh street house, and found it incumbered to nearly its full value, and was worthless to him. Whereupon he returned the title deeds to Langdon, and has now no title to the premises.

The plaintiff further offered evidence tending to prove that the patents to the Florida land had never been transferred to him; that he had written to Pomeroy about the lands, asking a transfer of the same previous to the bringing of this suit, but had heard nothing from him.

The plaintiff then rested. Whereupon the defendant prayed the court to instruct the jury that, admitting all the testimony adduced on the part of the plaintiff to be true, as a matter of law the plaintiff is not entitled to recover of the defendant, which instruction the court gave. To which ruling the plaintiff excepted, and the case then came to the General Term on a motion for a new trial.

A. A. LIPSCOMB and FILLMORE BEALL for plaintiff.

The rule of law is, beyond question, that a benefit to a third person at the request of the promissor is a sufficient consideration for the promise. Chitty on Contracts, 28.

The delivery of the books to Langdon, and the substitution of the new agreement with the defendant in place of the one with Langdon, is such a benefit.

The fact that the plaintiff took collateral security, even if it had not been worthless, affords no reason to defeat his right of action here. Chitty on Pleading, vol. 1, p. 118, 16th edition; Snow vs. Thomaston Bank, 19 Maine, 269.

The contention of the defendant is, that the plaintiff was properly defeated, because the testimony disclosed that he had returned the title to the Eleventh street house to Langdon, and therefore the defendant had a right to consider the contract rescinded, and to refuse to transfer the lands.

Upon this point plaintiff suggests:

First. That the agreement declares that the title to the Eleventh street house is "to be held by Simmons as collateral security for the perfection of the title to the Florida lands, and when the title is so perfected," Simmons was to return the title to the house to Pomeroy, and the proof shows that not only was the title to the Florida lands not perfected, but no offer was made by Pomeroy to transfer even the patents therefor to Simmons.

Second. If the evidence had shown Pomeroy willing and ready to transfer the patents, and perfect the title to the Florida lands, the inability and failure of Simmons to return to him the title of the Eleventh street house, would not suffice to defeat his action *in toto* but *pro tanto*, and the evidence showed the collateral security encumbered and worthless. It was a matter for *recoupment.* Leonard *vs.* Dyer, 26 Conn., 172; Ritchie *vs.* Atkinson, 10 East, 295; Chitty on Contracts, page 809, note *u*, and authorities there cited.

Third. Pomeroy could not rescind the contract, having failed to perform his part thereof. Chitty on Contracts, page 814, and note *u.*

Fourth. If Pomeroy treats the contract as rescinded by Simmons' return to Langdon of the titles to the Eleventh street house, he must return to Simmons the consideration paid at his request to Langdon, namely, the two thousand dollars worth of books. Bishop on Contracts, paragraphs 670, 680, 681.

W. J. NEWTON and R. B. LEWIS for defendant:

The contract on defendant's part, to transfer patent for Florida lands to plaintiff, and on plaintiff's part, to "return" or convey title to house 1743 Eleventh street to defendant, were mutual and dependent stipulations.

When plaintiff declares in a contract, which contains mutual and dependent stipulations, he cannot recover "without averring performance or an offer to perform on his part." Kane *vs.* Hood, 13 Pickering, 281.

It does not lie in the mouth of the plaintiff to say that the title to house No. 1743 could be of no value to the defendant. He could not constitute himself the judge of this, and upon an exercise of that judgment adverse to the defendant, give it as an excuse for the failure to perform his part of the contract.

By this act the plaintiff rendered himself liable to be sued for a breach of his contract, and having failed to perform a mutual and dependent stipulation of this contract, and having rendered himself unable to perform it, he cannot compel performance on the part of the defendant of his part of the contract.

"When a party has disabled himself from making an estate which he has stipulated to convey, he commits a breach of his stipulation and is liable to be sued." Chitty on Contracts, 799; Lovelock *vs*. Franklyn, 8 Q. B., 371; Fairbanks *vs*. Dow, 6 N. H., 267; Beecher *vs*. Consadt, 3 Kernan, N. Y., 108; Grant *vs*. Johnson, 1 Selden, N. Y., 247; Johnson *vs*. Wyngant, 11 Wend., 48; Ford *vs*. Tilley, Barn. & Cress., 325.

Mr. Justice Cox delivered the opinion of the court.

On the 2d of April, 1879, a contract was entered into between George Simmons and Andrew Langdon, the substance of which is, that the party of the first part, Simmons, sells to Langdon all of certain books, furniture and fixtures contained in certain rooms of a house in Washington, and in consideration of this, Langdon conveys by deed forty acres of land in Wisconsin, and also eight hundred acres of government land in Florida, "the same to be satisfactory to Simmons as to title, and to be located by him." Langdon at once took possession of the books, and, as the contrary does not appear, we presume that he conveyed the land in Wisconsin. He did not pretend to have title to the land in Florida at that time, but he had an agreement with the defendant, Pomeroy, by which Pomeroy was to convey to him those lands, and we also infer, from what follows, that, as a consideration for those lands, he was to convey to Pomeroy a

house located in Washington, No. 1743 Eleventh street n. w. He not being prepared to convey the land to Simmons, they seem to have made an arrangement all around, by which Pomeroy agreed with Langdon to convey the land so contracted for to Simmons, and, at the same time, the house which Langdon was to convey to Pomeroy was conveyed to Simmons, and the latter assumed to convey it to Pomeroy. Thereupon, Pomeroy and Simmons made a new contract in these terms:

"For value received, I hereby agree to sell to George Simmons eight hundred acres of land in Florida, the patents for the same to be transferred to Simmons as soon as received by me; and I hereby consent to have A. Langdon convey to Simmons the titles to house number 1743 11th street n. w. (subject to the incumbrance now on it), the same to be held by Simmons as collateral security for the perfection of the title to the Florida lands, and, when the title is so perfected, Simmons to return to me the title to the house number 1743 11th street."

Pomeroy failed to convey the land, and this suit was brought upon that agreement, to recover damages for the failure. It turns out in evidence, however, that Simmons had, in the meanwhile, conveyed the house back to Langdon, so that he was not ready to convey to Pomeroy, even if Pomeroy had been ready to convey the Florida land; and the defence is, that Simmons having put it out of his power to perform his part of the agreement, there is no right of recovery against Pomeroy on his agreement to convey the Florida lands. The court so held below, and granted an instruction to the jury to find for the defendant.

The answer to that, by the counsel for the plaintiff, is very ingenious. He takes the position that the consideration for this agreement of Pomeroy to convey the Florida land was two-fold; it was, first, the delivery of these books, and, secondly, the covenant to convey the house on Eleventh street. He says that a delivery of these books to Langdon is what moved Pomeroy to make this agreement to convey, so that Pomeroy is to be considered as having participated in that

consideration and really received it.    He says there was on one side a consideration executed and an executory agreement; on the other side an executory agreement alone. Then he invokes the rule of law that where the covenant on one side is only part of the consideration for the covenant on the other, the covenants are independent, and one may be enforced or sued upon without performing the covenants on the other side, while it is true that a failure on the part of the other side could be used by way of recoupment.

· This proceeds on the mistaken theory that Pomeroy received, directly or indirectly, a consideration in the delivery of those books, &c.    Pomeroy had simply a contract with Langdon that the latter would convey the house on Eleventh street in exchange for his Florida lands, and Langdon, in consideration of receiving these books, &c., from Simmons, turned that covenant over to Simmons; so that the only consideration to Pomeroy was the agreement to convey this house, which Simmons assumed.    He had no interest in the executed part of the consideration of the agreement between Simmons and Langdon.

It is claimed again, they are not mutually dependent covenants because one was to be performed after the other; in other words, *after* Pomeroy should make title to the Florida land, or *when* the title was perfected, Simmons was to return the house.    The true meaning is, that as soon as Pomeroy should perform, and concurrently with the act of delivering the patents to this Florida land, the plaintiff should convey the house on Eleventh street.    It seems to us that Simmons was bound to be ready to convey this house just as soon as Pomeroy tendered to him the patents to this land.    If he put it out of his power to convey the house, by returning it to Langdon, as the proofs show he did, he had already broken his part of the agreement and was not in a condition to sue for the violation on the part of Pomeroy.    Therefore, on the undisputed facts, the court below did right to instruct the jury to find for the defendant.